**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| SARAH WHITAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:23-cv-0888 PLC |
| | ) |
| FRANK BISIGNANO[1], | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Sarah Whitaker seeks review of the decision of Defendant Social Security Commissioner Frank Bisignano denying her application for Disability Insurance Benefits (DIB) under the Social Security Act. For the reasons set forth below, the Court affirms the Commissioner's decision.

**I.    Background and Procedural History**

On July 29, 2020, Plaintiff who was born on September 26, 1981, filed an application for DIB, alleging she was disabled as of May 27, 2020, as a result of cervical stenosis, chronic pain, anxiety, neuropathy, and headaches.[2] (Tr. 291-297, 298-305) The Social Security Administration (SSA) denied Plaintiff's claim, and she filed timely a request for a hearing before an administrative law judge (ALJ). (Tr. 291-297, 298-305, 308-317, 318-328, 329-330) The SSA granted Plaintiff's request for review and conducted a hearing on May 24, 2022. (Tr. 243-272, 351-370)

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2] Plaintiff previously filed a claim for benefits in July 2018, which was denied. (Tr. 273-290)

On August 1, 2022, the ALJ issued a decision finding Plaintiff not disabled. (Tr.  8-27) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-7, 28-30, 391-392)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II.    Evidence Before the ALJ

### A.  Plaintiff's Testimony

Plaintiff completed the 12th grade and attended college "some[.]" (Tr. 249) Plaintiff has a driver's license, and lives with her husband and two children who were aged eleven and seventeen. (Tr. 249-250)  Plaintiff was last employed in 2016 as an eligibility specialist for the State of Missouri assisting people apply for public benefits. (Tr. 250-251) In that position, she worked in a call center and was seated at a desk most of the time. (Tr. 251)

Plaintiff's pain varies "based on [her] activities and how [she] slept." (Tr. 252-253) Plaintiff experiences pain in her legs, arms, the "upper middle back or…lower back," as well as migraine headaches. (Tr. 252) Plaintiff's headaches present in the back of her neck to the front of her head, with her migraines lasting "a few days."  (Tr. 252) Plaintiff "has a brace" for her "cubital tunnel syndrome" which manifests as pain in her elbows and "down [her] arms." (Tr. 252)

Plaintiff is able to stand for twenty to twenty-five minutes without sitting or moving but her low back and upper middle back begin to hurt after twenty minutes. (Tr. 254)  Plaintiff sits for sixty minutes in a "hard chair" and for ninety minutes in a "comfortable chair" during Bible study at her church. (Tr. 253) Sitting for "too long" causes pain in Plaintiff's legs and low back, which she alleviates through movement including stretching her legs and walking. (Tr. 253-54) Plaintiff needs to walk for five to ten minutes before she can resume sitting for another sixty-minute period.

(Tr. 253-54).  Plaintiff described the pain in her legs as "crushing[,]" "throbbing, numbness[,] and tingling." (Tr. 252) Plaintiff is able to sit at desk or table and type for ten to fifteen minutes. (Tr. 255).  Plaintiff can lift a gallon of milk "if it's hanging down " but cannot lift it up to her chest, and she is unable to lift a case of water due to pain in her neck and arms. (Tr. 254)

Plaintiff stated that six or seven times per month, "out of the blue[,]" she experiences "intense pain" running from her shoulder through the top of her head. (Tr. 263)  Plaintiff can reach at shoulder level but experiences shoulder pain when doing so and cannot maintain that position for "a really long time." (Tr. 257) Plaintiff attended seven physical therapy sessions where she worked on improving this condition and her balance. (Tr. 257-58). Physical therapy improved her strength "a little bit" but did not provide "extreme changes." (Tr. 258) Plaintiff discontinued the therapy sessions due to their expenses but continues to do home exercises although she is unable to "do every activity every day." (Tr. 258)

Plaintiff's children provide "a lot" of assistance with household chores. (Tr. 258) Plaintiff stands and washes dishes for only five to ten minutes at a time because leaning hurts her upper back. (Tr. 253) Plaintiff sweeps and vacuums but does not mop. (Tr. 259)  Plaintiff can change out the laundry if someone carries the laundry to the laundromat. (Tr. 259) "[L]ooking down" for more than twenty minutes causes a migraine and Plaintiff is no longer able to craft because her "hands don't seem to want to work like they used to." (Tr. 256-257) Plaintiff has difficulty remembering what she has read and occasionally needs reminders. (Tr. 257)

Plaintiff takes gabapentin and a prescription muscle relaxer for pain. (Tr. 255-56) The gabapentin causes temporary blurry vision and both medications cause drowsiness.  (Tr. 255-256) Plaintiff naps during the day after taking the muscle relaxer. (Tr. 255) Plaintiff sleeps five or six hours at a time overnight due to pain. (Tr.  255) To alleviate pain in her upper middle back pain,

Plaintiff stretches her back, changes positions, and lies down. (Tr. 256) Plaintiff also takes over-the-counter medications like ibuprofen and Excedrin to offset her pain and to help alleviate her headaches. (Tr. 256)

For Plaintiff a "bad day" is one in which she experiences migraines, "intense leg pains," or "just pain[.]" (Tr. 260) On those days, Plaintiff stays at home "in [her] recliner" and uses heat, ice, and medication to alleviate the pain. (Tr. 259) Plaintiff testified she employs a disability parking placard on her "bad days." (Tr. 261)  Plaintiff experiences a "really bad" migraine five to six days a month. (Tr. 261) Plaintiff's migraines last for three to four days, and cause sensitivity to noise and light. (Tr. 260) Plaintiff received "a shot" at the hospital to ease migraine pain. (Tr. 260) Plaintiff has not sought treatment from a specialist for her migraines because her pain management doctor and neurologist advised her the migraines are the result of her "occipital nerve." (Tr. 261)

Plaintiff testified a neurosurgeon suggested as a treatment option prior to her seeing a pain management specialist and if she did not get sufficient relief from epidural and trigger point injections. (Tr. 262) Plaintiff testified injections in her upper back at C5 and C6 provided fifty to seventy-five percent relief for a couple of weeks. (Tr. 262)  Plaintiff stated she was scheduled to receive a lumbar epidural injection after an April 2022 MRI demonstrated nerve root irritation at her L3. (Tr. 262) Plaintiff further stated doctors ordered another nerve conduction test due to numbness and tingling in her fingers and hands. (Tr. 263)

### B. Prior Administrative Medical Findings of the State Agency Consultants

The SSA's Disability Determination Explanation denying Plaintiff's initial claim for benefits, dated April 15, 2021, contains the opinions of two state-agency non-examining consultants. (Tr. 292-297)  James Weiss, M.D. opined Plaintiff has the severe impairment of osteoarthrosis.  (Tr. 293) Dr. Weiss found Plaintiff could occasionally lift fifty pounds, frequently

lift twenty-five pounds, stand and/or walk six hours in an eight-hour period, sit six hours in an eight-hour period, had no limitations in pushing or pulling, and no postural or environmental limitations. (Tr. 295-96) In support, Dr. Weiss cited to imaging from December 14, 2020, which demonstrated degenerative disc disease or "mild spondylosis" of the lumbar spine at L4-5, "multilevel changes" of the cervical spine, and no significant degeneration of the thoracic spine. (Tr. 296)

Linda Skolnick, Psy.D. opined Plaintiff has the non-severe mental impairments of depression and anxiety. (Tr. 294) Dr. Skolnick concluded Plaintiff's mental conditions resulted in mild limitations in the functional area of concentrating, persisting, and maintaining pace, and no limitations in the remaining three areas of broad functioning. (Tr. 294) In support, Dr. Skolnick relied on: (1) Plaintiff's reported activities of daily living and ability to complete the forms, (2) treatment records from February 2, 2021, finding Plaintiff was oriented to time, place, person and situation; demonstrated appropriate mood and affect; and demonstrated normal insight and judgment, and (3) Plaintiff's failure to seek any specialized psychiatric care. (Tr. 294)

After the SSA's initial denial of benefits, Plaintiff sought reconsideration. (Tr. 318) The SSA's Disability Determination Explanation denying Plaintiff's claim for benefits at the reconsideration level, dated August 19, 2021, also contains the opinions of two state-agency non-examining consultants. (Tr. 299-305) Charolette Endsley, M.D. opined Plaintiff has the severe impairments of osteoarthrosis and a "disorder[] of the skeletal spine[.]" (Tr. 301) Dr. Endsley also concluded Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk six hours in an eight-hour period, sit six hours in an eight-hour period, had no limitations in pushing or pulling, and no postural or environmental limitations. (Tr. 302-303) Dr. Endsley limited Plaintiff to occasional overhead bilaterally reaching due to Plaintiff's cervical

spine issues, but found no limitations to front or lateral reaching, fingering, and feeling. (Tr. 302-303)  In support, Dr. Endsley cited to December 2020 imaging demonstrating degenerative disc disease as evidenced by mild spondylosis in the lumbar spine at the L4-5 and "multilevel changes" of the cervical spine. (Tr. 303) Dr. Endsley further noted that a February 2021 MRI of Plaintiff's cervical spine was similar to an MRI conducted in January 2020 which demonstrated "varying degree of neural foraminal narrowing" with spinal canal stenosis was most notable at C5-6. (Tr. 303) A February 2021 MRI of Plaintiff's thoracic spine showed no significant disc bulge or narrowing.  (Tr. 303) Dr. Endsley also cited Plaintiff's normal physical exam in April 2021, and that Plaintiff reported fifty percent relief in pain from a nerve root block at the C5-6 on June 11, 2021. (Tr. 303-304)

Robert Cottone, Ph.D., a psychology consultant, opined Plaintiff had the non-severe impairments of depression and anxiety. (Tr. 301) Dr. Cottone found Plaintiff had mild limitations to her ability to concentrate, persist, or maintain pace, and no limitations in the remaining broad functional areas. (Tr. 301) In support, Dr. Cottone cited treatment records from February 2021 demonstrating Plaintiff was oriented to time, place, person, and situation; her mood and affect were appropriate; and she demonstrated normal insight and judgment. (Tr. 300-301) Dr. Cottone noted Plaintiff was not receiving specialized psychiatric care and that, on reconsideration, Plaintiff did not allege a change of condition or present additional records in support of a different finding. (Tr. 301-302)

C.  Function Report

In an August 2020 function report, Plaintiff reported she was unable to sit or stand for "long periods of time[,]" experienced "frequent migraines[,]" and was unable to turn her head in any direction "frequently" without experiencing "pain/numbness/tingling/headaches" during the

movement or afterward. (Tr. 415) Plaintiff reported her activities of daily living encompassed: (1) getting up, (2) instructing her children to get ready, (3) taking a five-to-ten minute walk if she was "feeling okay," (4) sometimes helping her husband cook dinner, and (5) lying on the "couch most hours of the day to decrease pain." (Tr. 415-416)

Plaintiff assists in the care of her children by "remind[ing them] to dress, shower, and do chores w[ith the] help of her spouse." (Tr. 416)  Plaintiff has no issues with attending to her personal care other than needing occasional help removing over-the-head blouses. (Tr. 416) Plaintiff does not need reminders regarding her personal care or taking her medications. (Tr. 417) Plaintiff makes "heat" and "eat" meals, prepares meals a few times per week, and assists her spouse with cooking for five to ten minutes at time if she is "feeling okay." (Tr. 417) Plaintiff does no household chores due to "pain/numbness/tingling [with] extended standing/sitting/turning head." (Tr. 418) Plaintiff stated she "can never complete a task[.]" (Tr. 417)

Plaintiff leaves the house three to four times a week to check the mail or accompany family members to the store. (Tr. 418)  Plaintiff can ride in the car, use public transportation, walk for five minutes, and drive a car for five miles. (Tr. 418)  Plaintiff does not feel "comfortable/safe" leaving the house alone because of concerns she will need assistance due to her pain. (Tr. 418) Plaintiff assists her spouse with grocery shopping two to three times a week in fifteen-to-twenty-minute intervals. (Tr. 418) With the help of her spouse, Plaintiff can pay bills, count change, handle a savings account, and use a checkbook. (Tr. 418)  Plaintiff previously was able to do these things on her own. (Tr. 419) Plaintiff reports she watches movies daily and lies on the couch, frequently changing positions to stay comfortable. (Tr. 419) Plaintiff no longer visits friends and family, and instead stays at home with her immediate family every day. (Tr. 419) Although Plaintiff no longer attends social activities, she does not have any difficulty getting along with others. (Tr. 419-420)

Plaintiff reports that her medical conditions affect almost all physical activity including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing, and using her hands.  (Tr. 420) Plaintiff reports she can lift less than five pounds for short periods, walk less than five to ten minutes, and stand less than five minutes. (Tr. 420) Some days, Plaintiff is unable to climbing stairs, bend, or squat. (Tr. 420) Plaintiff further reports that her conditions affect her memory, concentration, and ability to complete tasks but not her ability to understand, follow instructions, and get along with others. (Tr. 420) Plaintiff is easily distracted and does not usually finish what she starts. (Tr. 420) Plaintiff follows written instructions well if she is "interested in completing" the task and spoken instructions well if there are not too many steps. (Tr. 420) Plaintiff gets along with authority figures and has never been fired due to problems with others. (Tr. 421) Plaintiff can use a computer in five-to-ten-minute intervals. (Tr. 424)

      D.  <u>Evidence from the Vocational Expert</u>

Vocational expert Melinda Stahr also testified at the hearing. (Tr. 264)  Ms. Stahr testified to the work classifications of Plaintiff's past work. (Tr. 265) Specifically, Ms. Stahr stated that Plaintiff's past work as: (1) an eligibility specialist is classified as sedentary, (2) a daycare worker is classified as light semi-skilled work, and (3) a teaching assistant is classified as medium, unskilled work. (Tr. 265)

The ALJ asked Ms. Stahr to consider a hypothetical individual with Plaintiff's age, education, and work experience who could work with the following limitations: "light work as the DOT defines it, overhead reaching occasional, balancing, kneeling, crouching, crawling, stooping, ramps and stairs occasional, no ladders, ropes, or scaffolds." (Tr. 265) Ms. Stahr testified this person would be able to perform Plaintiff's past work as an eligibility specialist and a daycare worker. (Tr. 265) Ms. Stahr stated this person would be able to perform other light unskilled jobs

8

of cashier, cleaner, and sales attendant. (Tr. 266) The ALJ added to the hypothetical frequent reaching in all directions, in addition to occasional overhead reaching, and Ms. Stahr testified her assessment did not change. (Tr. 266) Ms. Stahr opined that an individual can miss two workdays per month and maintain competitive employment. (Tr. 267)  An employee can be off task up to fifteen percent of the workday and maintain competitive employment. (Tr. 267)

In response to a question from Plaintiff's counsel, Ms. Stahr testified that the jobs she identified would be eliminated if a hypothetical individual needed a "sit/stand option where they would sit for approximately one hour and then need to stand for approximately twenty minutes and continue to alternate at that frequency." (Tr. 267) Counsel also asked if any of the identified jobs could be performed assuming a restriction that all lifting or carrying of objects occur close to the body, or by being held within one foot of the body, and Ms. Stahr noted that, in her professional opinion, those jobs would exceed the hypothetical person's abilities and would have to be addressed by an accommodation in the workplace. (Tr. 268)  Plaintiff's counsel further inquired whether a restriction of looking down for a maximum of twenty-minute intervals would affect her opinion, and Ms. Stahr responded the listed jobs would not be precluded. Ms. Stahr advised that an individual taking a five-minute break per hour, in addition, to the ordinary two fifteen-minute and one thirty-minute work break within an eight-hour period would not be able to maintain competitive employment. (Tr. 269)

E. <u>Medical Records</u>

The record also includes medical records dating from June 4, 2020 through April 6, 2022 which were presented to the ALJ.[3] (Tr. 497-905)

---

[3] Plaintiff presented additional medical records from April 29, 2022 through April 20, 2023 to the Appeals Counsel. (Tr. 32-242)  The Appeals Counsel found Plaintiff failed to demonstrate a reasonable probability that the records from April 29, 2022 through June 17, 2022 would change the outcome of the decision and that records after that period were irrelevant to the decision regarding whether Plaintiff was

III.    **Standards for Determining Disability Under the Social Security Act**

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520(a). Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity. *Id.* Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(a), (c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [the claimant's] ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)). At step three, the ALJ considers whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R.,

---

disabled on or before June 30, 2022. (Tr. 2) In its response to the Plaintiff's Statement of Uncontroverted Material Facts, the Commissioner repeatedly asserts the medical records after Plaintiff's date late insured of June 30, 2022 are immaterial to the issues. [ECF No. 21-1] Plaintiff did not file a reply and has not presented an argument or authority in support of the Court considering the medical evidence that was not presented to the ALJ or materialized after Plaintiff's date last insured.

The relevant medical records are discussed in detail below.

Pt. 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a), (d). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d)

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); 20 C.F.R. § 404.1520(a), (e). RFC is "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Id.* (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a), (f); *see McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 404.1520(a), (g); 404.1560 (c); *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled. 20 C.F.R. § 404.1520(g).

## IV. ALJ's Decision

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity between May 27, 2020, the alleged onset day, and June 30, 2022, the

last insured date; and (2) had the severe impairment of degenerative disc disease. (Tr. 13) The ALJ concluded Plaintiff had the non-severe impairments of headaches, acute abscesses, acute pruritus, acute respiratory infection, and anxiety. (Tr. 13-14)

The ALJ completed the psychiatric review technique prescribed by the regulations for assessing the severity of Plaintiff's mental impairment.[4] In doing so, the ALJ considered the medical records, Plaintiff's testimony, and Plaintiff's self-reported activities of daily living, and concluded that Plaintiff had no limitations in any of the four broad functional areas. (Tr. 14-15) At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15)

Based on his review of the record, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17) The ALJ found Plaintiff's self-reported pain, symptoms, and limitations were inconsistent with and disproportionate to the findings on diagnostic testing, the clinical signs at medical examinations, the medical treatment sought, the treatment modalities, and mediations offered. (Tr. 17)

---

[4] When a claimant has a mental impairment, the Social Security Act requires the ALJ to employ the psychiatric review technique when evaluating the severity of the claimant's mental impairments. *Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013) (citing 20 C.F.R. § 404.1520a(a), 416.920a(a)). The psychiatric review technique requires the Commissioner to "first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." *Id.* at 1118 (citing 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1)). The Commissioner then rates "the degree of functional limitation" in the following four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 416.920a(c).

The ALJ found the prior administrative medical findings of Dr. Skolnick and Dr. Cottone that Plaintiff had no severe mental impairments and only a mild impairment in one of the four broad functional areas, specifically in the ability to concentrate, persist, or maintain pace, to be mostly persuasive. (Tr. 18) The ALJ concluded their opinions were generally well supported and consistent with the record, however, the record did not contain objective mental status signs to support any impairment in the ability to concentrate, persist, or maintain pace. (Tr. 18-19)

The ALJ concluded the prior administrative medical finding of Dr. Weiss and Dr. Endsley that Plaintiff was limited to the medium exertional level,[5] with Dr. Endsley including additional overhead reaching limitations, to be unpersuasive. (Tr. 19)  The ALJ found their opinions were not well supported or consistent with Plaintiff's records, which supported greater exertional limitations and postural limitations based on Plaintiff's pain management history, testimony regarding pain, and updated medical records. (Tr. 19)

The ALJ determined Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b)[6] with the following additional exertional and non-exertional limitations:

---

[5] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 CFR §416.967(c). Further, the regulation also incorporates the definition of medium work as found in the Dictionary of Occupational Titles published by the Department of Labor, which defines the phrase as "[e]xerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects." Dictionary of Occupational Titles, Appendix C (4th Ed., Rev. 1991).

Social Security Rule 83-10 further explains that medium work involves standing or walking for "approximately 6 hours in an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Soc. Sec. Admin. Jan. 1, 1983).

[6] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR §404.1567(b). Further, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." *Id.*  The regulation also incorporates the definition of light work as found in the Dictionary of Occupational Titles published by the Department of Labor, which defines the phrase as "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly[, constantly meaning 2/3 or more of the time) to move objects." Dictionary of Occupational Titles, Appendix C (4th Ed., Rev. 1991).

> occasional overhead reaching, balancing, kneeling, crouching, crawling, stooping, and climbing ramps or stairs. The claimant should have no climbing ladders, ropes, or scaffolds.

(Tr. 15) The ALJ noted that objective imaging and testing supported a finding Plaintiff was capable of light work with additional postural limitations. (Tr. 19) Specifically, the ALJ found that the imaging noted mostly mild degenerative changes and her examinations were largely normal, which was inconsistent with the severity of pain and symptoms reported by Plaintiff. (Tr. 19) Further, the ALJ concluded the RFC was supported by Plaintiff's treating sources decisions not to recommend surgery for her degenerative disc disease and Plaintiff's reports that she experienced improvement with injections and physical therapy. (Tr. 19)

At step four, the ALJ stated Plaintiff could perform her past relevant work as an eligibility specialist and daycare worker. (Tr. 19) Based on the RFC, Plaintiff's age, education, and prior work experience, and the vocational expert's testimony, the ALJ determined that Plaintiff was also able to perform jobs that existed in significant numbers in the national economy, such as cashier, cleaner, and sale attendant. (Tr. 21) The ALJ therefore concluded Plaintiff was not disabled. (Tr. 21)

## V.    Discussion

Plaintiff argues the ALJ's physical RFC determination is not supported by substantial evidence because the record does not contain a medical opinion that considered "the updated MRIs" or Plaintiff's treatment after the date last insured, and the ALJ drew his own inferences about Plaintiff's functional ability from the medical evidence. [ECF No. 20] Plaintiff contends the ALJ failed to satisfy his duty to full and fairly develop the record by seeking "clarification" about

---

Social Security Rule 83-10 further explains that light work involves standing or walking, off and on, "for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (Soc. Sec. Admin. Jan. 1, 1983).

Plaintiff's work-related limitations from Plaintiff's "prior treating doctor or from a consultative doctor." [ECF No. 20] Plaintiff further asserts the ALJ failed to sufficiently explain his evaluation of the supportability and consistency of the medical opinions of the state agency reviewing physicians in in determining the opinions' persuasiveness.  [ECF No. 20] Plaintiff also argues the ALJ failed to make a proper pain evaluation and to adequately support his pain evaluation with an analysis of the relevant factors. [ECF No. 20]

The Commissioner responds that the ALJ's RFC is supported by sufficient evidence and that the ALJ properly evaluated the medical opinion evidence and prior administrative findings; the objective medical evidence; and Plaintiff's treatment and response to treatment, activities of daily living, and testimony in determining Plaintiff's RFC. [ECF No. 21] The Commissioner further contends the ALJ did not err in evaluating Plaintiff's reported symptoms and pain. [ECF No. 21]

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." *Id.* (quoting *Prosch*, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are

supported by good reasons and substantial evidence." *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B.  Physical RFC

Plaintiff challenges the ALJ's determination of her physical RFC, asserting the decision is not supported by substantial evidence in the record. Specifically, Plaintiff argues the ALJ's determination the Plaintiff is capable of light work with additional postural limitation is not supported by substantial evidence because the record does not contain a medical opinion that "interpreted the updated MRIs or reviewed the file to include considering the fact that [Plaintiff] has since had cervical spine surgery" since the ALJ relied on the lack of surgery and conservative treatment as a basis for finding Plaintiff's allegations of pain inconsistent with the evidence. [ECF No. 20]  Plaintiff further contends the ALJ failed to satisfy his duty to full and fairly develop the record by seeking "clarification" about Plaintiff's work-related limitations from Plaintiff's "prior treating doctor or from a consultative doctor." [ECF No. 20]

RFC is the most a claimant can do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. §404.1545(a)(1). The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)); 20 C.F.R. § 404.1545(a)(1).

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

Plaintiff challenges the ALJ's RFC because the record does not contain a medical opinion that "interpreted the updated MRIs" or considered Plaintiff's cervical spine surgery in January 2023.  In April 2021, Dr. Weiss reviewed imaging conducted in December 2020 and concluded it demonstrated degenerative disc disease. (Tr. 296, 303) Specifically, Dr. Weiss found degenerative changes at the L4-5 and mild spondylosis in the lumbar spine, and "multilevel changes" of the cervical spine. (Tr. 296, 303) In August 2021, Dr. Endsley reviewed both the December 2020 imagining and the February 2021 MRIs of Plaintiff's cervical, lumbar, and thoracic spines. (Tr. 303, 532-537) In the  February 2021 radiology reports, Plaintiff's provider noted his findings of no acute compression fractures, significant disc bulging, or spinal canal narrowing of the thoracic spine; that the multilevel cervical spondylosis changes were "similar when compared to the previous MRI" conducted in January 2020 and mild-to-moderate foraminal narrowing in the cervical spine at the C5-C6 and C6-C7; and mild spondylosis and degenerative disc disease without spinal canal stenosis or significant neural foraminal stenosis of the lumbar spine. (Tr. 532-537) Both Dr. Weiss and Dr. Endsley concluded that Plaintiff's conditions resulted in some

limitations to Plaintiff's ability to lift, stand, walk and climb stairs, and determined Plaintiff could perform work at the medium exertion level. (Tr. 296, 303)

On review, Plaintiff does not identify which "updated MRIs" she believes should have been evaluated. [ECF No. 20] The record demonstrates only one additional MRI conducted before Plaintiff's date last insured of June 30, 2022. On April 22, 2022, Plaintiff underwent an MRI of her lumbar spine. (Tr. 902-902) The radiology report noted no spinal canal stenosis at any level, mild bilateral hypertrophic facet arthropathy at three levels and moderate bilateral hypertrophic facet arthropathy at one level, and mild annular disc bulges at the three levels. (Tr. 902-903) Plaintiff's provider noted that his impression was of spondylosis and degenerative disc disease of the lumbar spine with the "[f]indings not significantly progressed as compared to January 2021." (Tr. 903) In light of Plaintiff's provider's finding, Plaintiff has failed to demonstrate that an additional medical opinion reviewing an MRI that showed no significant progression of a condition would have caused the ALJ to decide differently. *See Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020)(quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("An error is harmless when the claimant fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'").

As already noted, Plaintiff presented medical records to the Appeals Counsel evidencing additional testing and treatment through April 2023 which was not presented to the ALJ. (Tr. 32-242) According to these records, Plaintiff underwent another cervical MRI in November 2022 and cervical spine surgery in January 2023. (Tr. 32-242) The ALJ entered his decision in this case on August 1, 2022. (Tr. 11-22) Plaintiff's contention that the ALJ erred by failing to consider medical testing and treatment conducted after his decision was entered is clearly without merit as it simply cannot be said that the ALJ erred by failing to consider evidence that did not exist.

18

Plaintiff also contends the ALJ failed to satisfy his duty to fully and fairly develop the record by seeking an opinion regarding Plaintiff's work-related limitations from one of Plaintiff's treating physicians or a consultative examiner.[7] The ALJ "has a duty to fully and fairly develop the evidentiary record." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012). In some cases, the duty to develop the record requires the ALJ to obtain medical evidence, such as a consultative examination of the claimant, before rendering a decision. See 20 C.F.R. §404.1519a(b). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy*, 648 F.3d at 612. "[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir.1984)).

Here, the ALJ reviewed the medical opinions from two state-agency non-examining consultants regarding Plaintiff's physical limitations. In addition, the ALJ possessed evidence regarding Plaintiff's medical treatment, including her continued conservative treatment and objective testing demonstrating mild finding and a lack of significant progression of her condition, and Plaintiff's testimony and reported activities of daily living. Accordingly, this is not a case in

---

[7] Plaintiff further contends that the ALJ erroneously "drew his own inferences about Plaintiff's functional ability from the medical reports and then relied on those inferences to choose between the conflicting opinions of non-treating, non-examining physicians, to form an opinion of her RFC." [ECF No. 20] This assertion, however, is unsupported by the record.

The record contains the medical opinions of four state agency, non-examining consultants with respect to Plaintiff's physical or mental limitations. (Tr. 293-296, 300-306) As already discussed in this memorandum, the medical opinions of the physicians were not conflicting but in agreement with each other. (Tr. 293-296, 301-303) Dr. Weiss and Dr. Endsley both opined that Plaintiff was capable of performing medium work with Dr. Endsley provide a few additional postural limitations. (Tr. 293-296, 301-303) Dr. Skolnick and Dr. Cottone both opined that Plaintiff, with respect to her mental conditions, had only a mild limitation in one of the four broad functional areas and no limitations in the remaining three. (Tr. 294, 300-303) While the ALJ did not find any of these opinions to be wholly persuasive, it cannot be said that the ALJ relied on improper inferences to "choose between the conflicting opinions of non-treating, non-examining physicians," in that the medical opinions of record were not conflicting.

which a crucial issue was undeveloped and it was not necessary for the ALJ to obtain additional medical opinions regarding Plaintiff's work-related limitations. Upon review of the record as a whole, the Court finds substantial evidence supports the ALJ's determination that Plaintiff was capable of medium work with additional postural limitations.

C.  Evaluation of Medical Opinion Evidence

Plaintiff argues the ALJ failed to follow the regulations' requirements for evaluating medical opinion evidence by analyzing the supportability and consistency of the medical opinions. Specifically, Plaintiff contends the ALJ failed to provide a "legally sufficient explanation" of his evaluation of the supportability and consistency of the state agency physicians' medical opinions in determining the opinions' persuasiveness.  [ECF No. 20]

For claims filed on or after March 27, 2017, such as Plaintiff's claim, the ALJ evaluates medical opinions and prior administrative medical findings under 20 C.F.R. §§404.1520c, 416.920c. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c (a), 416.920c (a). Rather, the ALJ will consider all medical opinions according to several enumerated factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes the length of treatment relationship, the frequency of examinations, the purpose of the treatment, the extent of treatment, and the examining relationship; (4) the medical source's specialization; and (5) other relevant factors such as the medical source's familiarity with the other evidence and the source's understanding of the SSA's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c (a), (c); 416.920c (a), (c).

The ALJ must articulate in his determination how persuasive he finds all of the medical opinions and prior administrative medical findings in the case record. 20 C.F.R. §§ 404.1520c (b), 416.920c (b). The most important factors are supportability and consistency, and the ALJ must explain in his determination how he considered these factors for each medical source's medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c (a), (b)(2);  416.920c (a), (b)(2).  *Dornbach v. Saul*, 4:20-CV-36 RLW, 2021 WL 1123573, at *4 (E.D. Mo. Mar. 24, 2021). Generally, the ALJ is not required to explain his consideration of the remaining factors.[8]  20 C.F.R. §§ 404.1520c (b)(2); 416.920c (b)(c); *Martini v. Kijakazi*, 4:20-CV-1711-CDP, 2022 WL 705528, at * 4 (E.D. Mo. Mar. 9, 2022).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be." 20 C.F.R. §§ 404.1520c (c)(1); 416.920c (c)(1). Thus, supportability is an assessment of how well a medical source supported and explained his or her opinion. *Daniels v. Kijakazi*, No. 21 Civ. 712 (GWG), 2022 WL 2919747, at *5, (S.D. N.Y. July 26, 2022). The ALJ may consider whether the physician's own treatment notes support the physician's opinion. *Starman*, 2021 WL 4459729, at *4.

The regulations provide that "consistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c (c)(2); 416.920c (c)(2). "Thus,

---

[8] The ALJ must articulate his consideration of the remaining factors when two or more medical opinions or prior administrative medical findings about the same issue are not exactly the same and both opinions are equally well supported and consistent with the record. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c (b)(2).

'[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them.'" *Daniels*, 2022 WL 2919747, at *5 (quoting *Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *10 (S.D. N.Y. Jan. 29, 2021).

    a.  Opinions of Dr. Weiss and Dr. Endsley

Dr. Weiss, a state-agency non-examining consultant, opined Plaintiff has the severe impairment of osteoarthrosis and that she is capable of performing work at the medium exertion level. (Tr. 293-96)  In support, Dr. Weiss cited to imaging from December 2020, which demonstrated degenerative disc disease or "mild spondylosis" of the lumbar spine at L4-5, "multilevel changes" of the cervical spine, and no significant degeneration of the thoracic spine. (Tr. 296)

On reconsideration, Dr. Endsley, another state-agency non-examining consultant, opined that Plaintiff has the severe impairments of osteoarthrosis and a "disorder[] of the skeletal spine[.]" (Tr. 301)  Dr. Endsley also concluded that Plaintiff was limited to work at the medium exertional level with the added limitation of occasional overhead bilaterally reaching due to Plaintiff's cervical spine issues, but found no limitations to front or lateral reaching, fingering, and feeling. (Tr. 302-303)  In support, Dr. Endsley cited to December 2020 imaging demonstrating degenerative disc disease as evidenced by mild spondylosis in the lumbar spine at the L4-5 and "multilevel changes" of the cervical spine. (Tr. 303) Dr. Endsley further noted that a February 2021 MRI of Plaintiff's cervical spine was similar to a January 2020 MRI that demonstrated "varying degree of neural foraminal narrowing" and spinal canal stenosis most notable at C5-6, and no significant disc bulge or narrowing of the thoracic spine. (Tr. 303) A February 2021 MRI of Plaintiff's thoracic spine showed no significant disc bulge or narrowing.  (Tr. 303) Dr. Endsley

also noted that Plaintiff had a normal physical exam in April 2021 and received fifty percent relief from a nerve root block at the C5-6 in June 2021. (Tr. 303-304).  In his determination, the ALJ considered both Dr. Weiss's and Dr. Endsley's opinions that Plaintiff was capable of the work at the medium exertional level, and concluded the opinions were not persuasive because they were not "well supported or consistent with the claimant's record, which supported greater exertional limitations and postural limitations based on the claimant's pain management history, testimony regarding pain, and updated records." (Tr. 19)

Plaintiff now seeks reversal, claiming the ALJ failed to sufficiently assess and explain the supportability and consistency factors with respect to Dr. Weiss's and Dr. Endsley's opinions. Specifically, Plaintiff argues that the ALJ erred by failing to explain how the supportability and consistency factors were considered, or provide any discussion of the relevance of the objective medical evidence or the consistency of the opinions with the evidence from other medical and nonmedical sources. [ECF No. 20]

"An ALJ's error requires reversal and remand only if the error prejudices the claimant." *Bigelow v. Berryhill*, No. 4:18-00624-CV-RK, 2019 WL 13203969, at * 6 (W.D. Mo. Sept. 26, 2019). Here, the ALJ concluded the opinions of Dr. Weiss and Dr. Endsley that Plaintiff was capable of work at the medium exertional level to be unpersuasive because the record supported greater exertional limitations. (Tr. 19) The ALJ ultimately concluded that Plaintiff was capable of light work, a more restrictive RFC than that assessed by Dr. Weiss and Dr. Endsley.  (Tr. 19) Accordingly, even assuming the ALJ erred in his assessment, Plaintiff was not prejudiced by the alleged error. *See Laramie v. Kijakazi*, No. 4:22-CV-107 ACL, 2023 WL 2610215, at *5 (E.D. Mo. Mar. 23, 2023) ("Because the ALJ found that the record supported greater mental limitations

than found by the state agency psychological consultants, any error in the ALJ's failure to elaborate on her analysis of these prior administrative finding was harmless.").

b. Opinions of Dr. Skolnick and Dr. Cottone

Dr. Skolnick, a state-agency non-examining consultant, opined Plaintiff had the non-severe mental impairments of depression and anxiety. (Tr. 294) Dr. Skolnick concluded Plaintiff's mental conditions resulted in mild limitations in the functional area of concentrating, persisting, and maintaining pace, and no limitations in the remaining three broad functional areas.  (Tr. 294) In support, Dr. Skolnick cited to treatment records from February 2, 2021,  and Plaintiff's lack of specialized psychiatric care, reported activities of daily living, and ability to complete the forms. (Tr. 294)

Dr. Cottone, a state agency non-examining consulting specializing in psychology, offered a similar medical opinion, finding Plaintiff had the non-severe impairments of depression and anxiety, and exhibited only mild limitations to her ability to concentrate, persist, or maintain pace, and no limitations in the remaining broad functional areas. (Tr. 301) Dr. Cottone also relied upon Plaintiff's treatment records from February 2021 demonstrating Plaintiff was oriented to time, place, person, and situation; Plaintiff's mood and affect were appropriate; and Plaintiff exhibited normal insight and judgment. (Tr. 300-301) Dr. Cottone further observed that Plaintiff was not receiving specialized psychiatric care, made no allegation of changed or worsening of her condition, and presented no additional evidence upon reconsideration of Dr. Skolnick's opinion. (Tr. 301-302)

In his determination, the ALJ found the opinions of Dr. Skolnick and Dr. Cottone to be "mostly persuasive[.]" (Tr. 18) The ALJ found their opinions were generally well supported and consistent with the record but that the record did not contain objective mental status signs to

24

support any impairment in the ability to concentrate, persist, or maintain pace, ultimately concluding that Plaintiff had no limitations in any of the broad functional areas. (Tr. 18-19).

Plaintiff contends the "ALJ failed to provide a legally sufficient explanation for the evaluation of the opinion evidence" because it does not adequately explain how the supportability and consistency factors were considered. [ECF No. 20] Plaintiff argues the ALJ offered no discussion of the relevance of the objective medical evidence or the consistency of the opinions with the evidence from other medical or nonmedical sources.

Here, the medical opinions of Dr. Skolnick and Dr. Cottone, and the ALJ's assessment of the persuasiveness of those opinions, center on the absence of evidence supporting any functional impairment resulting from Plaintiff's mental conditions. While the ALJ did not thoroughly set out the lack of evidence supporting a finding of no limitations in this section of the opinion, the ALJ's decision contains a detailed and substantial analysis of Plaintiff's abilities in the broad functional areas and the evidence supporting a finding that Plaintiff did not exhibit any limitations in any of the areas. (Tr. 14-15) In support of the his assessment in these areas, the ALJ extensively cited to the medical records and treatment notes, Plaintiff's testimony, and Plaintiff's self-reported activities of daily living. (Tr. 14-15) Notably, Plaintiff self-reported only minimal issues in these areas, generally reporting no issues or limitations with the exception of: (1) needing occasional reminders, (2) not finishing what she started, (3) some concentration issues with multi-step instructions, and (4) having some trouble dealing with stress. (Tr. 413-426, 243-272) The ALJ observed that Plaintiff's medical records noted: (1) normal memory, insight, judgment, concentration, neurological exams, and behavior; and (2) no abnormal anxiety or difficulty getting along with others. (Tr. 14-15) Plaintiff provides no substantive argument as to why she believes

25

the ALJ's evaluation of Dr. Skolnick's and Dr. Cottone's opinions were flawed or are otherwise not supported by the record.

    D.  <u>Plaintiff's Subjective Complaints</u>

Plaintiff argues the ALJ failed to make a proper pain evaluation and to adequately support the determination with an analysis of the relevant factors. [ECF No. 20] Specifically, Plaintiff contends the ALJ failed to explain his conclusion that the clinical and objective evidence was inconsistent with Plaintiff's subjective complaints of pain, and failed to address the "many positive exam findings" found in the medical records and objective medical testing.  [ECF No. 20] The Commissioner counters that the substantive evidence supports the ALJ's evaluation of Plaintiff's subjective complaints of symptoms, in that they were inconsistent with objective medical evidence and exam findings. [ECF No. 21]

When determining a claimant's RFC, the ALJ must evaluate the consistency of the claimant's subjective complaints with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); SSR 16-3p, 2017 WL 5180304 (SSA. Oct. 2017).  While an ALJ cannot ignore a claimant's subjective complaint, *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984), it may discount those complaints if "they are inconsistent with the evidence as a whole." *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015).  In discounting a claimant's subjective complaints, an ALJ must consider all of the evidence and make an express determination, detailing her reasons for discounting the claimant's complaints, identifying inconsistencies between the claimant's complaints and the evidence in the record, and discussing the relevant factors set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). *Renstrom*, 680 F.3d at 1066. The *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication;

(5) the claimant's functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence supporting the claimant's complaints. *Id.* at 1065–66; *see also* 20 C.F.R. § 404.1529(c). While an ALJ must consider these factors, she need not discuss how each factor supports her determination. *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007). If an ALJ "explicitly discredits" a claimant's complaints and "gives a good reason for doing so," a court should defer to her determination. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).

Social Security Rule 16-3p, effective March 28, 2016, also sets forth factors relevant to the ALJ's evaluation of the intensity, persistence, and limiting effects of a claimant's symptoms and the ALJ's "analysis of whether a claimant's subjective complaints are consistent with the medical evidence." SSR 16-3p, 2017 WL 5180304 (SSA. Oct. 2017); *Noerper v. Saul*, 964 F.3d 738, 745 (8th Cir. 2020); *Lawrence v. Saul*, 970 F.3d 989, 995 (8th Cir. 2020). If a claimant makes statements about the intensity, persistence, and limiting effect of her symptoms, SSR 16-3p requires the ALJ to determine whether the statements are consistent with the medical and other evidence of record.  SSR 16-3p, 2017 WL 5180304, at *8; *see also* 20 C.F.R. § 416.929(c)(3) (explaining how the SSA evaluates symptoms, including pain). While SSR 16-3p eliminates the use of the term "credibility" in examining a claimant's subjective complaints and clarifies that the Commissioner's review is an examination for the level of consistency between a claimant's subjective assertions and the balance of the record as a whole, SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" under *Polaski*.[9] *Noerper*, 964 F.3d 738, 745 n. 3 (8th Cir. 2020).

---

[9] The SSR 16-3p factors are similar to the *Polaski* factors and include: (1) the claimant's daily activities; ( 2) the location, duration, frequency, and intensity; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) treatments other than medications; (6) other measures used to relieve symptoms; and (7) any other functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8.

In assessing Plaintiff's RFC, the ALJ considered Plaintiff's reported conditions and symptoms, and found Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17) Specifically, the ALJ found that Plaintiff's self-reported pain, symptoms, and limitations were inconsistent with and disproportionate to the findings on diagnostic testing, the clinical signs at medical examinations, the medical treatment sought, the treatment modalities, and mediations offered. (Tr. 17)

In making this assessment, the ALJ found objective medical testing demonstrated mostly mild degenerative changes and treatment notes reflect largely normal physical examinations, which were inconsistent with the severity of pain and symptoms reported by Plaintiff. (Tr. 19) The ALJ noted that despite Plaintiff's reports of difficulty using her hands, extreme pain, and numbness, her EMG was normal and confirmed, contrary to her testimony, that she did not have cubital tunnel syndrome. (Tr. 497-503) Spinal imaging revealed most mild degenerative changes and no spinal cord compression or nerve root impingement. (Tr. 526-537) A January 2021 lumbar spine MRI showed minimal to mild disc bulges, mild spondylosis and degenerative disease, mild stenosis, and mild left neural foraminal stenosis, while a subsequent MRI in April 2022 showed no significant progression of her condition. (Tr. 536-537, 902-903) An MRI of Plaintiff's cervical

---

SSR 16-3p also directs the ALJ to set forth specific reasons for the weight given to the claimant's symptoms and to identify and explain the consistencies and inconsistencies between the claimant's symptoms and the other evidence of record. 2016 WL 1119029, at *8-9. Furthermore, SSR 16-3p requires the ALJ to consider and discuss only those factors that are relevant to the assessment. 2016 WL 1119029, at *7. Compare Renstrom, 680 F.3d at 1066 (in evaluation of claimant's subjective complaints, the ALJ must consider all of the evidence and make an express determination, detailing her reasons for discounting the claimant's complaints, identifying inconsistencies between the claimant's complaints and the evidence in the record, and discussing the relevant factors set forth in Polaski, 739 F.2d 1320).

spine in February 2021 showed multilevel spondylotic changes similar to her prior MRI with mild to moderate spinal canal narrowing and neural foraminal narrowing at C5-C6. (Tr. 534-535)

The ALJ concluded that imaging "repeatedly confirmed" that Plaintiff did not have any spinal cord compression, any nerve root impingement, or any neuroforaminal narrowing beyond a mild degree, or any central stenosis beyond a mild to moderate degree.  (Tr. 18) The ALJ also considered Plaintiff's conservative treatment, including Plaintiff experiencing "fair control" with medication, a fifty percent relief of symptoms with injections, and improvement with minimal physical therapy, and noted that, at the time, Plaintiff had not been offered spinal surgery. (Tr. 18) The ALJ further considered that while medical sources documented tenderness and moderate pain with range of motion, Plaintiff did not exhibit distress, has brisk reflexes, full strength in her hands, and no gait problems. (Tr. 18) Accordingly, the ALJ provided good reasons for discounting Plaintiff's testimony and the Court defers the ALJ's determination.

## VI.    Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of September, 2025